UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

United States of America

v.

Jose Escalera and Giovanni Cotto ,

Defendants.

**Decision and Order**
14-CR-133A

## I.   INTRODUCTION

The Hon. Richard J. Arcara has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 17.)  Pending before the Court are omnibus pretrial motions from defendants Jose Escalera ("Escalera") (Dkt. No. 29) and Giovanni Cotto ("Cotto") (Dkt. No. 93).  Generally, both defendants seek various types of information as they prepare to defend against a charge of retaliating against a witness.  The Court held oral argument for all pretrial motions on April 13 and September 15, 2016.  Since all of the pending motions are non-dispositive in nature, the Court finds that no hearings or recommendations are necessary and adjudicates each motion as described below.

## II.   BACKGROUND

This case concerns allegations that Escalera and Cotto arranged for or encouraged co-defendant Charles Hecht ("Hecht")[1] to beat a federal trial witness unconscious.  According to the pre-indictment complaint (Dkt. No. 1), Anthony Maldonado ("Maldonado") testified on May 22, 2014 during the trial in *United States v. Jose Martinez*, Case No. 10-CR-233S.  Maldonado testified against an associate of Escalera.  To summarize a lot of details in the complaint, Maldonado, Escalera, and others had occasions prior to May 22, 2014 to know and to communicate with each

---

[1] Hecht entered a guilty plea before Judge Arcara on August 24, 2015 and currently awaits sentencing on December 22, 2016.  The Court will mention Hecht only as needed for background purposes.

other.  These occasions arose in jail, in United States Marshals Service ("USMS") lockup at the

federal courthouse in Buffalo, or during USMS transport to and from the federal courthouse.  On

May 22, 2014, Escalera, Cotto, Hecht, Maldonado, and others were housed together at the

Cattaraugus County Jail.  By that time, Escalera, Cotto, and Hecht knew about Maldonado's

testimony, deemed Maldonado a "rat," and decided "that something needed to be done about it."

(Dkt. No. 1 at 7.)  Meanwhile, while the consensus about Maldonado was falling into place, Hecht

had approached Cotto about obtaining "assistance" from Cotto's gang, the Latin Kings, during

Hecht's time in state prison.  Cotto offered protection or "assistance" in exchange for assaulting

Maldonado.  Hecht followed through and assaulted Maldonado on May 23, 2014, breaking his

jaw, beating him unconscious, and prompting the need to bring Maldonado to Erie County

Medical Center for treatment.  According to the Government in the complaint, two different

video recordings exist that pertain to the assault of May 23, 2014: 1) a recording of the assault of

Maldonado in the Cattaraugus County Jail recreational yard; and 2) a recording of a prior

encounter in a classroom involving Escalera, during which Escalera passed information about

Maldonado to intermediaries, who would then pass the information to Cotto.

Proceedings in this case began on July 9, 2014.  The Court held an initial appearance on

that day for all three defendants.   On July 25, 2014, the Government filed a one-count indictment

against all three defendants. (Dkt. No. 16.)  In the indictment, the Government accuses all three

defendants of retaliating against Maldonado for his testimony, in violation of 18 U.S.C.

§§ 1513(b)(1), 1513(c), and 2.  The Court arraigned all three defendants on July 28, 2014.

Escalera filed omnibus pretrial motions on January 8, 2015 (Dkt. No. 29) while Cotto filed omnibus pretrial motions on February 16, 2016 (Dkt. No. 93).  The two sets of motions overlap each other enough that, for brevity and simplicity, the Court will address them by category of motion and will deem its findings applicable to both Escalera and Cotto unless otherwise noted.

III.    DISCUSSION

A.  *Motion for a Bill of Particulars*

Defendants seek a Bill of Particulars that specifies any predicate criminal acts that the Government is alleging and that assigns principal or accomplice liability more precisely under 18 U.S.C. § 2.  The Government opposes the request, citing to the criminal complaint, document discovery, and video footage as sufficient to put defendants on notice about what happened on May 23, 2014.

"Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense."  *U.S. v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citations omitted).  "Moreover, it is of no consequence that the requested information would have required the disclosure of evidence or the theory of the prosecution.  While a bill of particulars is not intended, as such, as a means of learning the government's evidence and theories, if necessary to give the defendant enough information about the charge to prepare his defense, it will be required even if the effect is disclosure of evidence or of theories.  A district court judge, however, has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate

3

form." *U.S. v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) (internal quotation marks and citations omitted).

Here, defendants already have enough information about the nature of the charges against them to avoid surprise at trial. Through the criminal complaint and voluntary discovery, defendants already know that, according to the Government, they talked about Maldonado as a "rat" for testifying at a federal trial. Defendants also know that they are accused of deciding "that something needed to be done about" Maldonado's testimony and that Cotto allegedly recruited Hecht to assault Maldonado in exchange for gang protection. Defendants know further when the assault occurred and that discussions leading up to the assault occurred the day before. Under these circumstances, defendants have sufficient notice of the charges against them to allow for the proper preparation of a defense, to avoid surprise at trial, and to protect them from double jeopardy. The Court accordingly denies the request for a Bill of Particulars.

## B. Motion for Rule 16 Discovery

Defendants seek a variety of information under Rule 16, including: statements; grand jury testimony for uncharged defendants or co-conspirators; hearsay evidence to be produced at trial; reports including expert reports; physical evidence including video recording; criminal history; logs or summaries of intercepted conversations; search warrant applications; surveillance records; identity of witnesses; and preservation of rough notes. The Government opposes the motion in several ways. The Government points to discovery that it already has produced. The Government also confirms that it has no search warrant applications, bank records, phone records, photographs, or physical evidence for this case. Finally, the Government argues that some of the requested information is premature and will be provided later under a final pretrial order or the Jencks Act.

A portion of the request for witness identities that concerns the jail video footage will be addressed separately below.  As for the rest of defendants' Rule 16 requests, so long as the Government arranges for preservation of rough notes, the Court finds the Government's responses adequate at this time.  The Court thus denies defendants' motion but without prejudice to renew after Judge Arcara issues a final pretrial order.

### C.  Motion for Brady /Jencks /Giglio Information

Defendants seek information subject to disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963), the Jencks Act, 18 U.S.C. § 3500, and *Giglio v. U.S.*, 405 U.S. 150 (1972).  "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution . . . . Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly."  *Brady*, 373 U.S. at 87.  The *Brady* rule covers situations "[w]hen the reliability of a given witness may well be determinative of guilt or innocence."  *Giglio*, 405 U.S. at 154 (internal quotation marks and citation omitted); *accord U.S. v. Bagley*, 473 U.S. 667, 676 (1985) (plurality opinion) ("Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule.") (citing *Giglio*).  When considering information that might fall under the *Brady* rule, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).  The Government does not necessarily have to await a defense request to produce information that falls under the

*Brady* rule, but neither does it need to adopt an "open file policy." *See id.* at 437; *see also U.S. v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) ("Under *Brady* and its progeny, the government has an affirmative duty to disclose favorable evidence known to it, even if no specific disclosure request is made by the defense.  The individual prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation.") (citations omitted).  Also, "[e]vidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *U.S. v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982) (citations omitted).  As for the timing of *Brady* disclosure, "[i]t is not feasible or desirable to specify the extent or timing of disclosure *Brady* and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made.  Thus disclosure prior to trial is not mandated.  Indeed, *Brady* requires disclosure of information that the prosecution acquires during the trial itself, or even afterward . . . . At the same time, however, the longer the prosecution withholds information, or (more particularly) the closer to trial the disclosure is made, the less opportunity there is for use." *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001) (citations omitted).

Here, the Government has acknowledged its affirmative obligations for disclosure under *Brady*, the Jencks Act, and *Giglio*, and has committed to making disclosures within the time that the District Judge will set in the eventual trial order.  To the extent that the issue of video footage implicates *Brady / Jencks / Giglio*, the Court will discuss the issue separately below.  The Government's commitment otherwise will suffice, absent a showing that a different arrangement is necessary in this case.  The Court thus denies the motion but without prejudice.

### D.  Motion for Identification of Inmates

The Court is giving this motion its own subheading because the motion contains elements of a Rule 16 motion, a motion for witness lists, and a motion for *Brady* information.  *Cf., e.g., United States v. Gil*, 297 F.3d 93, 106 (2d Cir. 2002) (finding a *Brady* violation in information provided so close to trial that "the defense was not in a position to read it, identify its usefulness, and use it"); *United States v. Quinones*, No. 13-CR-83S, 2015 WL 6696484, at *3 (W.D.N.Y. Nov. 2, 2015) (directing production of annotated video footage in part because "if [the Government] plays any video footage at all then it likely would identify which defendants appear where in the footage as part of its preparation"); *United States v. Chimurenga*, 609 F. Supp. 1066, 1069 (S.D.N.Y. 1985) (ordering production of surveillance photographs under Rule 16, where the "photographs are not otherwise available, and failure to obtain the photographs could delay and impede defendants' preparation for trial").  As the Court explained above, the Government has furnished defendants with two video recordings: one from the recreation yard where the assault took place and one from a classroom prior to the assault.  The video recordings do not have any accompanying audio.  The Government also has provided defendants with statements of witnesses whom corrections officers at Cattaraugus County Jail interviewed when investigating the assault.  The statements apparently have been redacted to remove the identities of the interviewees.  The Court has not seen the statements, but defendants report that

> There is one statement in particular that is helpful to the defense.  This inmate told the investigating officers on May 26, 2014, that he did not believe the assault by Hecht had any connection with Maldonado's testimony directly.  This witness also stated that he believed the assault occurred because Hecht may have believed that Maldonado was providing testimony because of the amount of time he was taken from the jail.

7

Such testimony is clearly material to the defense of the charge that defendant Cotto aided the assault by Hecht *with the intent to retaliate against Maldonado for testifying*. The government is unlikely to call this witness in its case in chief. Therefore, disclosure of the identity of this inmate is absolutely essential.

(Dkt. No. 93 at 4.) Given the lack of audio in the video recordings and encouraged by a potentially exculpatory statement in the Government's discovery, defendants argue that

[T]he defense needs access to the identities of the inmates who were interviewed along with all Giglio material relating to those witnesses. It also needs the list of all of the inmates who were housed in block B-1 and were present in the rec yard when this attack took place so that it can explore possible favorable witnesses. The lack of this information has put the defense at a great disadvantage in its trial preparation.

It would be one thing if the surveillance tapes had recorded the audio so that we could hear conversation. But we do not. As such, early and complete disclosure of the witnesses' identities, inducements, and criminal records is of primary importance in properly preparing a defense to this serious case, especially since we are dealing with jailhouse informants.

(*Id.* at 3.)

The Government filed formal opposition to the disclosure of informants or to the early disclosure of trial witnesses (Dkt. No. 43 at 16), but the parties have told the Court orally that they have made substantial progress toward a practical compromise. During oral argument on April 13, 2016, the Court asked the Government to check whether any corrections officers at Cattaraugus County Jail could help identify unknown inmates depicted in the video recordings. (Dkt. No. 106.) At a follow-up status conference on May 3, 2016, the Government reported that it found a corrections officer who was able to review the video recordings. (Dkt. No. 111.) At a subsequent oral argument/status conference on June 2, 2016, the parties reported that the corrections officer had reviewed the video recordings in a "very productive meeting" and had identified approximately 15 inmates by name. (Dkt. No. 115 and digital audio on file). Defendants

therefore shifted their focus to locating the 15 or so inmates now identified.  Prior counsel for the Government indicated that he would relay the request to the case agent and that he did not anticipate, though he could not rule out, any opposition.

Since the parties graciously have collaborated toward fulfilling most of what defendants wanted in their motion, the Court will take an incremental approach.  For the 15 or so inmates depicted in the video recordings and now identified by name, the Government is directed to make a reasonable effort to identify their last known locations.  If the inmates remain incarcerated in a state or federal prison then the Government will make a reasonable effort to identify the last known correctional facility where they were housed.  If the inmates have since been released then the Government will confirm their release.  Whether the Government should attempt to locate released inmates depicted in the video recordings is an issue that the Court can leave for Judge Arcara to determine, based on the Government's eventual witness list and based on the circumstances of the parties' final preparations for trial.  The Court will defer to Judge Arcara also on the issues of whether and when to disclose the identity of the declarant of the potentially exculpatory statement identified above.

The above approach should strike a fair balance between the Government's right to avoid early disclosure of trial witnesses and defendants' right to prepare for trial, and it should steer the parties well clear of the concern in *United States v. Morrison*, 518 F. Supp. 917, 918 (S.D.N.Y. 1981), where the destruction of an inmate list meant that "the government has made it impossible for the defendant to locate certain potential witnesses on his behalf."  The Court grants defendants' motion in part as explained above and denies it without prejudice to the extent that it seeks any other relief.

9

### E.  Motion for Information Under Various Federal Rules of Evidence ("FRE")

Finally, defendants seek disclosure of various information that the Government might use at trial, including character evidence, prior convictions, prior bad acts, and anticipated expert testimony.  Defendants seek this information under FRE 403, 404(b), 609, 702, 703, and 705. The Government responds that it already has provided defendants with information about their criminal histories.  As for other information sought, the Government does not oppose defendants' requests categorically but argues that the requests are premature.

FRE 404(b) governs requests for disclosure of all evidence of prior bad acts that the Government intends to use in its case-in-chief.  FRE 404 requires that defendants be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial."  To the extent that the Government intends to use any such evidence of a prior bad act in its case in chief, the Government will produce all FRE 404(b) evidence as directed by Judge Arcara in the trial order.

With respect to the requests under FRE 403, 608, and 609, the only notice requirement imposed by any of those Rules applies closer to trial.  FRE 609(b)(2) mandates that "the proponent [give] an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."  To the extent that the Government intends to use at trial evidence falling under these rules, it must give reasonable notice as directed by Judge Arcara in the trial order.

As for expert witnesses, the Court directs the Government to remain mindful of its obligations under Rule 16(a)(1)(G) but otherwise finds that its response is sufficient.

10

In sum, the Court denies defendants' motion but without prejudice to renew as needed at trial or after issuance of a trial order.

## IV.    CONCLUSION

The Court grants defendants' omnibus pretrial motions (Dkt. Nos. 29, 93) in part and denies them in part as explained above.  This case now is ready for trial.

SO ORDERED.

___/s Hugh B. Scott_____
Honorable Hugh B. Scott
United States Magistrate Judge

DATED: October 11, 2016

11